UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JERRY WAYNE WILLIAMS                    CIVIL ACTION NO. 10-cv-1460

VERSUS                                  JUDGE HICKS

LOUISIANA STATE PENITENTIARY            MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury convicted Jerry W. Williams, Jr. ("Petitioner") of second-degree murder of Shane Howard, who was shot and killed in the stairwell of his Creswell Street apartment in the Highland neighborhood in Shreveport.  Petitioner's conviction and mandatory life sentence were affirmed on direct appeal.  State v. Williams, 972 So.2d 1214 (La. App. 2d Cir. 2007), writ denied, 983 So.2d 1271 (La. 2008).  Petitioner also filed a state post-conviction application.  He now seeks federal habeas corpus relief on several issues. For the reasons that follow, it is recommended that the petition be denied.

**Facts**

Cherie Hudson testified that in February 2005, when the murder occurred, she and Shane lived together in a Creswell Street apartment.  Cherie used crack cocaine at the time, and she had purchased crack several times from a man she knew as G-Wayne.  She had on a couple of occasions traded Lortab for crack, and G-Wayne called the apartment about 9:00 o'clock one evening and wanted to obtain more Lortab.

Cherie, who said she had been clean for 18 months by the time of trial, said that Shane took the phone and told G-Wayne that they were trying to straighten out their lives and did not want anymore drugs.  G-Wayne continued to call throughout the night, and he and Shane engaged in an increasingly heated argument.

The calls continued until after midnight, with some on speakerphone.  Brittany, Cherie's 15-year-old daughter, heard Shane say to G-Wayne that he thought G-Wayne was coming over.  She heard G-Wayne reply that he had to get some things together and would be there in about 30 minutes.  Cherie and Shane began to argue between themselves, with Cherie slapping Shane and trying to talk him out of going down to confront G-Wayne. Brittany called 911 to report the fight and because she was scared, and officers were dispatched to the apartment.  Brittany also pleaded with Shane not to go downstairs, and she followed him, pulling on the back of his shirt, when he did.  Brittany testified that they saw Petitioner holding a black handgun at the bottom of the stairs.  Shane turned around with his back toward Petitioner, and Brittany crouched down in front of him.  She then heard seven or eight gunshots, and Shane began to fall toward her.  Brittany ran upstairs, hid in a closet, and called 911 for a second time.   Officers arrived soon after the shooting, but Shane was dead.  Officers recovered seven nine millimeter casings from the scene.

Brittany testified that the telephone rang while the police were at the apartment.  She answered and spoke to G-Wayne, who thought she was Cherie.  He asked how she was and, "Where is Shane?"  Brittany responded that he should know where Shane was, and she told a female police officer that the man on the phone did the shooting.  The officer took the

phone, hung it up, and told Brittany not to answer it again.  The caller ID indicated that the call came from the number of Mary Washington.  Police were able to determine that Mary Washington was Petitioner's mother, with whom he lived just a few blocks away.  Ms. Washington testified that the phone was in her name but belonged to her son.

Brittany was shown a six-man photo lineup the morning after the shooting.  She identified a photograph of Petitioner and said she was about 90% sure he was the shooter. Brittany wanted to see more recent photos, so she was shown a separate lineup about three weeks later. She was unable to identify the suspect in that lineup. When she saw Petitioner at trial, she said she was 100% sure it was him.

The police questioned Petitioner about his whereabouts at the time of the murder.  He said he went to Shontelle Smith's house that night and was so intoxicated he did not leave until 10:00 a.m. the next morning.  Shontelle testified that Petitioner had come to her house, but the last time she saw him was before 10:00 p.m., and Petitioner was gone when she woke up around 6:00 a.m. the next morning.  Petitioner's mother testified that she saw her son come home at about 1:45 a.m., which would have been a little before the shooting.

Aaron Dobbins testified that he had known Cherie and Brittany for several years, and he had known Shane for about three months.  He said he witnessed Cherie, accompanied by Brittany on one occasion, buy drugs from G-Wayne.  Police contacted him during the investigation, and he gave information on where G-Wayne could be found.  Dobbins was later arrested and jailed on drug charges, and he was housed in the same pod with Petitioner. He sat near Petitioner on the recreation yard and asked if he knew who he was.  Dobbins

testified that Petitioner said that he did because Dobbins' name was in his paperwork, which he went to retrieve.

Petitioner returned with his discovery papers and was talking to Dobbins when two other inmates walked up and asked what was going on.  Dobbins testified that Petitioner replied, "This is the dude that's in my paperwork on that motherfucker I murced."  Dobbins explained that murc (as the court reporter spelled it) is street slang for murder.  Research indicates that the term is merc, derived from mercenary, and does mean (among other things) to kill or murder.  Jail officials, when they found out the connection between the men, immediately moved Dobbins to another area.

## Sufficiency of the Evidence

The jury returned a verdict, 11-1, of guilty of second degree murder.  Louisiana defines that crime as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.  La. R.S. 14:30.1(A).  Petitioner challenges the sufficiency of the evidence, an argument he presented to the state courts on direct appeal.  In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined

by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).  Thus, a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard.  It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard.  Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).

The state appellate court recited the Jackson standard and reviewed the evidence in detail.  Petitioner pointed to the lack of fingerprints, DNA, or ballistic evidence to link him to the crime.  The court responded that the testimony of Brittany and Cherie, telephone records, and the statement Petitioner made in the presence of Aaron Dobbins were more than sufficient to support a jury's conclusion that Petitioner was the shooter.  Petitioner argues on habeas that Brittany was not 100% sure at the first lineup and could not identify Petitioner at the second lineup.  She also described the shooter as dark skinned when Petitioner is light skinned.  Cherie and Brittany both initially lied to police to cover up their drug transactions. Petitioner argues that their testimony must be viewed with extreme caution.

The matters urged by Petitioner were explored by defense counsel on cross-examination.  The jury was able to weigh them and other factors in reaching its verdict.  "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial."  Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).  And "under Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review."  Schlup v. Delo, 115 S.Ct. 851, 868 (1995).  "All credibility choices and conflicting

inferences are to be resolved in favor of the verdict." Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005). The jury heard testimony, that if deemed credible, supported the verdict.  The state appellate court carefully applied Jackson to the record and affirmed that verdict.  That adjudication was a quite reasonable application of Jackson to the facts.  There is no basis for habeas relief on this claim under the doubly deferential standard of review.

**Denial of Mistrial**

When Aaron Dobbins testified that Petitioner said in his presence that he had "merced" the victim, defense counsel made an objection that was discussed at a bench conference.  The court stated that the objection was deemed contemporaneously made, was overruled, and reasons would be given later.  Tr. 921-23.  Later, outside the presence of the jury, defense counsel moved for a mistrial because he had not received proper discovery regarding the alleged statement by Petitioner, which he said violated several articles of the Louisiana Code of Criminal Procedure.  The court heard extensive arguments from both sides about what information was exchanged and what the rules required.  The court reviewed applicable Louisiana law and denied the motion because any mistake by the prosecution did not require automatic reversal and there was not any prejudice to the defense.  Tr. 985-93.

Petitioner argued on direct appeal that the trial court's ruling ran afoul of various articles of the Louisiana Code of Criminal Procedure and state court decisions that interpret them.  Tr. 1057-59 and 1089-90.  The state appellate court applied the Code articles to the facts and affirmed the denial of the motion for mistrial. State v. Williams, 972 So.2d at 1218-

20.  Petitioner's writ application to the Supreme Court of Louisiana also presented the issue solely in terms of state law.  Tr. 1117-19.

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Supreme Court has stated many times that "federal habeas corpus relief does not lie for errors of state law."  Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011), quoting Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991). "[C]laims that the trial court improperly applied state law do not constitute an independent basis for federal habeas relief."  Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998).  And  a mere error of state law is not a denial of federal due process protection.  Swarthout, 131 S.Ct. at 863.

The Fifth Circuit rejected a similar habeas petition in Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) when a Louisiana prisoner argued that the state courts violated the Louisiana Code of Criminal Procedure and state jurisprudence interpreting the Code.  The Fifth Circuit explained that it "will not review a state court's interpretation of its own law in a federal habeas corpus proceeding" because it does not sit as a "super" state supreme court to review errors under state law.  Petitioner's petition should receive a similar response.  His arguments about the correctness of the Louisiana courts' application of the Code has not presented a federal claim on which habeas relief might be afforded.

**Bench Conferences**

Petitioner argues that the lack of a transcript of seven bench conferences during the trial deprived him of his right to appeal under the Louisiana Constitution and Code of Criminal Procedure.  The examples cited include a conference with counsel just before opening statements began (Tr. 838) and a discussion about an objection during the Aaron Dobbins testimony (Tr. 921-22).  Petitioner presented this argument in terms of state law in his post-conviction application.  Tr. 1188-91.  The state's response included an affidavit from trial counsel, who testified that he did not recall any subject that arose during a bench conference that would have required anything else be placed on the record that was material to trial or appellate rights.  Tr. 1258.  The trial court rejected the claim because Petitioner had not demonstrated any prejudice from the lack of recording of the conferences.  Tr. 1279.  The state appellate court summarily found the claim to be without merit (Tr. 1472), and the Supreme Court of Louisiana denied writs without comment.  Tr. 1618.

Petitioner's habeas memorandum continues to argue this claim in terms of Louisiana law.  As noted above, Petitioner may not obtain habeas relief on mere errors of state law.  He has also failed to demonstrate any prejudice stemming from this issue.  To the extent the claim could be deemed an exhausted federal claim, Petitioner has not identified any clearly-established federal law within the meaning of 28 U.S.C. § 2254(d) that was violated by the state court.

**Prosecutor Argument**

The prosecutor said during closing arguments that the trial was not about him or defense counsel. It was about Petitioner and Shane. With respect to Shane, the prosecutor said that this was "his day in court," but Shane did not get an attorney and could not be present. Defense counsel objected but was overruled. Tr. 1020. Petitioner argued in his post-conviction application that a mistrial should have been granted. The trial court noted that counsel objected but did not move for a mistrial. The court reviewed permissible argument under state law and found no error. Tr. 1279. The argument was summarily rejected by the appellate court. Tr. 1472.

Improper jury argument by the state does not provide a basis for habeas relief unless the argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 106 S.Ct. 2464, 2471 (1986). The petitioner must also demonstrate prejudice by showing that the misconduct was so persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks. Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988); Turner v. Johnson, 106 F.3d 1178, 1188 n. 46 (5th Cir. 1997).

It is debatable whether Petitioner properly exhausted a federal claim with respect to this argument; his arguments were presented in terms of state law. To the extent a claim was exhausted, it lacks habeas merit. The argument at issue was not particularly inflammatory and simply reminded the jury of the victim. There was nothing about the argument that

would run afoul of the demanding standard set forth above.  There is certainly no basis to believe Petitioner would have been acquitted if the argument had not been made.

**Ineffective Assistance of Counsel**

### A.  Introduction; Standard of Review

Petitioner argues that his trial counsel was ineffective for several reasons. To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007).  The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches

only "extreme malfunctions" in the state criminal justice system.  Id.  Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable."  Id.

### B.  Manslaughter Instruction

The trial judge instructed the jury on the elements of second degree murder and the lesser offenses of manslaughter and negligent homicide.  He told the jury that manslaughter is a homicide that would be murder but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.  Tr. 1026.

Petitioner argued in his post-conviction application that counsel was ineffective because he did not insist the trial court instruct the jury that sudden passion and heat of blood are not elements of the offense of manslaughter.  Petitioner cites cases such as State v. Fuller, 962 So.2d 1203 (La. App. 2d Cir. 2007).  Counsel was wise not to make such a request because, as Fuller explains, those are not elements but are factors in the nature of a defense that a defendant must show by a preponderance of the evidence to warrant a verdict of manslaughter.  If counsel had done as Petitioner insists he should have, he would have added a burden on the defense.  It was also of little relevance because Petitioner's entire defense was that he was not the shooter.  There was never any concession by the defense that Petitioner fired the fatal shots but did so at a reduced level of culpability.  The state courts rejected this claim, and their adjudication was reasonable.

### C.  Motion to Suppress Identification

Petitioner argued in his post-conviction application that counsel was ineffective because he did not move to suppress the identification testimony by Brittany Hudson. Counsel testified in an affidavit filed in state court that his review of the discovery, reports of his own investigators, and talks with Petitioner revealed no grounds for a motion to suppress.  He said that it would be difficult if not impossible to show that the identification process was suggestive since the witness knew the accused before the offense, and he believed her tentativeness at the first identification and her inability to identify Petitioner in the second lineup were grounds to be explored on the merits of the case but not a suppression motion.  Tr. 1255-56.  The trial court agreed with counsel's characterization of the issue.  Tr. 1277.  The state appellate court, without specifically addressing this claim, generally held that Petitioner did not meet his burden of showing relief should be granted.  Tr. 1472.

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL 2711022, *5 (W.D. La. 2007).

The law regarding identification testimony must be reviewed to see if a motion to suppress would have been meritorious.  A conviction based on an eyewitness identification at trial following a pretrial identification will be set aside only if the identification procedure

was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification.   A two-step process governs the admissibility of identification evidence: First, a court must determine whether the pretrial identification was impermissibly suggestive; if it was, then second, a court must determine whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification.  Coleman v. Quarterman, 456 F.3d 537 (5th Cir. 2006).

The Supreme Court has identified several factors to help determine the likelihood of misidentification: (1) the opportunity of the witness to view the criminal at the crime scene; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Coleman, supra, citing Neil v. Biggers, 93 S.Ct. 375 (1972).  Unless the circumstances show "a very substantial likelihood of irreparable misidentification" then the identification is admissible, and its weight is for the jury to decide. Manson v. Brathwaite, 97 S.Ct. 2243, 2254 (1977).

There were certainly weaknesses in Brittany's testimony.  She initially described the shooter as being dark skinned, but admitted at trial he was light skinned.  Her level of certainty was not 100%, but it was 90% just a few hours after the crime.  Counsel explored these issues at trial.  He also questioned the officers about the method in which they presented lineups.  No improprieties were discovered.

Petitioner has pointed to some weaknesses in the identification testimony.  There was no motion to suppress, but the issues were explored thoroughly at trial.  The record shows

that there was not a "very substantial likelihood of irreparable misidentification" that would have had to have been present before the state court would have granted a motion to suppress.   There is no Strickland claim unless Petitioner demonstrates that a motion to suppress would have been meritorious. He has not made that showing or, more important, that the state court's adjudication of this claim on the merits was an objectively unreasonable application of Strickland to the facts.  Habeas relief is not warranted on this claim.

### D.  Cross-Examination of Brittany

Petitioner complains that counsel did not adequately cross-examine Brittany Hudson to develop the weaknesses in her identification testimony.   Brittany admitted on direct examination that she was only 90% sure that the person she identified in the first photo lineup was the shooter, and she was unable to identify anyone in the second lineup.  Tr. 908-09.

Defense counsel cross-examined Brittany by exploring the details of the lineups and having her repeat her uncertainty on the first identification and lack of identification at the second.  He had Brittany explain the lighting in the area and whether she was in a position for a good view of the shooter.  Counsel had Brittany read to the jury the description of the shooter that she gave a detective.  He pointed out that she had described the shooter as dark skinned, but Brittany admitted in court that Petitioner was light skinned.  Tr. 910-16.

Defense counsel testified in the post-conviction proceedings that he had made these points during the cross-examination and argued them to the jury in an effort to show that Brittany's identification was unreliable.  Unfortunately for Petitioner, the argument did not

prevail.  Tr. 1256.  The state court briefly discussed the cross-examination and denied the claim on the merits.  Tr. 1277.

Petitioner, with the benefit of hindsight, has come up with additional points that counsel might have made in cross-examination and otherwise to undermine the identification. He faults counsel for not presenting evidence of Petitioner's actual height and weight or asking Brittany whether Petitioner's voice was the same as she heard in the cell phone conversations between the shooter and the victim.  He also faults counsel for not questioning Brittany about her testimony that she made eye contact with the suspect (which likely would have reinforced her identification rather than undermine it).

Lawyers and litigants, and especially habeas petitioners, almost always later think of questions that might have been asked or points that could have been made that would have strengthened their case.  But in reviewing counsel's performance, a court must be highly deferential and make every effort to eliminate the distorting effects of hindsight, and the court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 104 S.Ct. at 2065.  Counsel's "decisions regarding examination and presentation of witnesses and testimony" fall within the category entitled to such deference and a "strong presumption of effectiveness."  Pape v. Thaler, 645 F.3d 281, 291 (5th Cir. 2011).  Counsel's performance might not have been perfect, but it was entirely reasonable given the facts of this case.  And, had counsel asked the additional questions posed by Petitioner, there is not a reasonable probability that the verdict would

have been different.  The state court's adjudication of this claim was a reasonable application of Strickland, so habeas relief is not permitted.

### E.  Investigation of Aaron Dobbins

Petitioner provided counsel, before trial, a letter signed by Aaron Dobbins (a/k/a Aaron Swindle) in which Dobbins stated that he was not present at the shooting, did not see Petitioner the night of the shooting, and his statement to the detective was based on what Brittany and Cherie told him.  He said he could not be sure that Cherie and Brittany's statement to him that G-Wayne killed Shane was true.  Petitioner faults counsel for not then conducting additional investigation regarding Dobbins.

Defense counsel testified in state court that the letter regarded hearsay that Dobbins relayed to police as well as a defense investigator.  Dobbins never claimed to be an eyewitness, so the letter struck counsel as irrelevant and immaterial.  Counsel was also suspicious, because of the printed signature, that the letter might be a "jailhouse concoction." The actual problem stemming from this witness, counsel said, was his testimony that Petitioner admitted in his presence that he merced the victim.  Tr. 1256-57.  The state court, noting that counsel examined Dobbins on the issues of his credibility and the plausibility that Petitioner made such a statement, denied the claim.  Tr. 1278.

Mr. Dobbins did not claim at trial that he witnessed the shooting or had any knowledge of Petitioner's whereabouts on that night. He did not say what Cherie or Brittany told him about the killer.  The focus of his testimony was Petitioner's statement in jail that Dobbins' name was mentioned in the investigation of the person Petitioner merced.  There

is nothing in the letter to undermine that testimony or suggest counsel needed to do additional investigation regarding Dobbins.

A habeas petitioner who alleges a failure to investigate on the part of his counsel "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." Gregory v. Thaler, 601 F.3d 347, 352 (5th Cir. 2010). Petitioner offers nothing but conclusory assertions that more investigation regarding Dobbins would have helped the defense. A Strickland claim asserted on habeas must be adjudicated under Section 2254(d)(1), and the petitioner must overcome the limitations of that statutory standard "on the record that was before the state court." Cullen v. Pinholster, 131 S.Ct. 1388 (2011). It is reversible error for a district court to hold a federal hearing to flesh out such a claim. Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011). Petitioner cannot meet his burden on the state court record that the state court's adjudication of this issue was not only wrong but unreasonable, so this claim should be rejected.

### F.  Other Crimes Evidence

Petitioner argued in his post-conviction application that counsel was ineffective because he did not object to the testimony by Cherie that (1) she purchased crack from G-Wayne on several occasions and (2) the arguments that night were about another drug transaction. He contends that counsel should have been able to exclude the evidence that Petitioner was engaged in drug crimes.

Counsel testified that this argument was frivolous because the drug transactions were part of the res gestae of the offense so were admissible under Louisiana law. Tr. 1258. The

Page 17 of  20

trial court agreed because evidence of other crimes may be introduced when it relates to res gestae, meaning conduct that forms an integral part of the transaction that is the subject of the trial.  The rule, codified under La. C. E. art. 404(B), allows evidence of other crimes when it is related and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to it.  The purpose served by admission of the other crimes evidence is "not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." State v. Colomb, 747 So.2d 1074, 1076 (La. 1999). Evidence of other crimes is also admissible under Article 404(B) for proof of motive.  The evidence regarding the drug transactions falls neatly within these exceptions.  Any objection by counsel would certainly have been denied.  Not making a meritless objection cannot be grounds for a finding of deficient performance.  Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997).

**Cumulative Error**

Petitioner's final argument is that the cumulative effect of errors at his trial denied him a fundamentally fair proceeding.  The state court rejected the claim because none of the alleged errors had merit.  Tr. 1280.  Federal habeas corpus relief may only be granted for cumulative errors  in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors so infected the entire trial that the resulting conviction violates due process. Martinez Perez v. Dretke, 172

Page 18 of  20

Fed.Appx. 76 (5th Cir. 2006), citing <u>Derden v. McNeel</u>, 978 F.2d 1453, 1457 (5th Cir.1992) (en banc).  Petitioner has not established an error of constitutional dimension, for the reasons discussed above, so he is not entitled to habeas relief on this claim.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>See Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules

Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 17th day of July, 2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE